I hope everybody made it safely. The case this morning is 14-1111 of Kim Laube & Company v. Wahl Clipper. Mr. Pavelko? Pavelko. That's correct. May it please the Court, we're here on an appeal of two parts. I'm sorry, my mistake. As a preliminary matter, as you both know, we sent a letter asking the parties to be prepared to discuss the confidentiality markings in the briefs, correct? So could you comment on that before you begin your argument on the merits? That goes primarily to the trade secret. There is one other area that went to a previous ownership agreement between the two parties here. Wahl had a 75% ownership with the Kim Laube & Company. That was one thing we indicated as confidential. In the appellee's brief, they did not designate that confidential. So that one thing would be not confidential. The remaining of the confidential all goes to the trade secret. As we said, Wahl owned Kim Laube. So they knew the trade secret. They had access to the trade secret. But their whole point of the argument here is that the trade secret was either not a trade secret or it was lost. We are trying to prevent any indication of losing that trade secret by any public disclosure of exactly what it was. Although you know from reading the brief and the appendices, we produced it to Wahl. It was before the judge on summary judgment. We tried to keep the specific nature of it out as well as leading anybody to the specific nature of the trade secret. And that's the only portion of the brief and the documents that we produced that are made confidential. So far as I can see, there's a grand total of one page in the entire appendix and briefs put together that actually reveals the core of what's claimed to be the trade secret. That's correct. And that is the circuit. That's correct. The rest of it, I am bewildered why it's been marked confidential. Let me give you an example. The statement – and this is in the table of contents of the blue brief. A, quote, simple examination of the product does not fully disclose the technology. Why is that confidential? Because it shows – That statement. That per se might be confidential, but combined with other things. It might not be confidential, you mean. That's how we prevent the information from becoming public. So this is a kind of prophylaxis that you're engaged in here? That this is not confidential, but you want to make sure that it doesn't lead to the confidentiality being – Well, if we told our competitors that you can find our trade secret by looking for mass products and then examining the mass portion of this device, the clipper, we're leading them right to what the trade secret is. We're trying to prevent leading our competitors to the trade secret. It's not a secret between the parties here. It's a secret to the world, basically. All right. Why don't you proceed with your argument? Okay. We're here on the attorney's fees on the patent side, and on the trade secret side, a reversal and remand of the trade secret, and a vacation of the award of damages – of attorney's fees. On the patent side, this case has an unusual history because prior to the imposition of a stay because of a re-exam, there was about nine months to a year of non-litigation except to disqualify an attorney. No costs were expended on the actual merits. There was no answer filed. The case was stayed. The re-exam proceeded, and it proceeded at its normal pace. There was nothing unusual about the re-exam being stayed in the office or anything like that. The reasons they gave for the imposition of the stay in the first place was to get the expertise of the patent office, reduce costs, and get a quicker resolution of the patent issues. There was no reason to lift the stay. We contend that the court's lifting of the stay at the time it did was error. And the reason being some of the same prior art that had been before the office would have been precluded had the issue gone through the full examination in the office. The certificate issued, the parties would have been precluded from re-litigating the same subject matter. Excuse me. Yes. Where in the record below did Laub argue the merits of a fee award as opposed to the amount and scope? I'm sorry. I don't quite understand the question. The amount of scope of? Sure. Did your client argue below for anything other than the amount of the fee award and the scope of the fee award as opposed to the merits of the fee award? Yes. It argued both. Okay. Where in the record did it argue the merits question? Could I answer that on rebuttal? I don't have the citation before us. But it was argued that there should be no imposition of fees at all. The fees were awarded in the order that said the claims are unenforceable. Not the amount of fees, but the fees were awarded at that point. Okay. I guess I'm trying to connect here your dispute over whether or not the stay should have been lifted or not lifted. Yes. But the fees were awarded in connection with the inequitable conduct question. And that question is certainly separate and distinct from anything that was before PTAB, right? The inequitable conduct is not something that the PTAB handles. Right. Correct. But the fees were not awarded just for inequitable conduct. They were awarded for markman hearing. They were awarded for non-infringement. They were awarded for invalidity. And they were awarded for inequitable conduct. So the whole merits of the action were retried by the court when if it would have been left to the PTO to issue the certificate, claims 1 to 5 would have been canceled. It would have been nothing. About 6 and 7, right? 6 and 7 would have survived. They were never requested to be in the re-exam. No, not in the re-exam. But they could have been. But you were asserting them in the re-exam. No, we were not asserting them. I thought that you stated in one of your pleadings that they were being asserted. There was a statement by counsel that he believed the all claims were valid and infringed. But he didn't say I'm asserting 6 and 7. So in your view— Laub's claim—let me just—this is at 5932. And I think this is your pleading. Yes. Laub's claim that Wall was liable for infringement of asserted claims 1 through 7. I interpreted that as meaning that you were asserting 1 through 7. So 5932's first full paragraph. It says right here at the beginning of line 4, because the court has issued a ruling on the construction of claims 1 to 7, because 1 governed the dependent claims as well. That precludes the finding of infringement. Laubie has no choice but to ask the court judgment in Wall's favor on Laubie's claim that Wall is liable for infringement. So he's— Liable for infringement of asserted claims 1 through 7. You see the finish of that sentence? Yes, I do. I see that, Your Honor. So doesn't that suggest to the untutored eye that, in fact, you are saying that 1 through 7 are being asserted? Actually, the Second Amendment complaint, which is the operative complaint, only says 1 and 4. Well— I understand what you're saying here, but this was not our position to go move forward. This was our position to get out of the case. Well, if I were the district judge and I read that as your reason to get out of the case, I would have concluded, well, 6 and 7 are still alive. This getting rid of 1 through 5 doesn't take the case off the burner, right? I mean, whether you decided ultimately to assert 6 or 7 or whether you had previously asserted them or indicated you were going to assert them, they were still alive in the case. They were still alive in the case. The PTO did not cancel them. They were still alive, but they were never asserted. They were never positively asserted, and we made no attempt to separately assert them. All right. On the question, though, of going forward, the art that was primarily relied on was a lot of art that we didn't know about, and during the course of prosecution of the reexamination, we came to the understanding that our claims were not patentable in view of this additional art. But the principal art was what's called or classified as lobby prayer art. This was art that the reexamination requester said anticipated claim 1. It was put in as a substantial new question. The requester then went to the court to ask the state to be lifted just on the fact that it was a substantial new question being a but-for materiality. The PTO did not adopt the anticipation rejection proposed by the requester. They did use that art in combination with another reference under 103. So it's possible it could have been but-for material, but during the course of the reexam, that art was not continued on. Isn't that because of the amendment to claim 1? There were amendments, but not necessarily to avoid the lobby prayer art. The amendments were to avoid all this other art that was being cited. There were many anticipatory references in this other prior art. And the content of the lobby prayer art is not in dispute. There was a Mr. Melton who was an employee of Wahl who testified as an expert as to what one skilled art would understand the lobby prayer art to contain. And that was that the lower teeth of the cutting head engaged the cone. Are you arguing now about the finding of inequitable conduct? What is the context of the argument you're making? There are two arguments. One, that the court should not have gone through anything but if they wanted to reserve inequitable conduct. So all the other fees, we didn't drive the litigation. Once we got the PTAB decision that the claims were not patentable, we asked the court to dismiss our claims. Without prejudice. Without prejudice. The patent wasn't fully adjudicated at that point. So you really were not throwing in the towel at that point. You were trying to effectively get a stay pending the review by this court of the PTAB, correct? That's correct. All right. But we weren't going forward. We had invalid claims from the PTAB at that time. We told the court we couldn't go forward with a non-infringement case. Later, the court held a markman hearing after our motion to dismiss the claims and wrongly construed the independent claim one. And again, that leads into the unenforceability that's going to come later where the lobby prior art had a lower non-movable or fixed cutting blade and an upper, or it didn't have any cutting blade. It just had a groove to receive the lower cutting blade. Let me see if I understand your theory of the claim construction. The notch in your theory engages the upper cutting blade, correct? That's the language of the patent. There is no mention in the claim of what happens with the lower blade. Right. Now, you're saying that that doesn't mean that there's retention affected by the engagement, correctly? Correct? There cannot be engagement. All right. Well, all right. And in fact, Melton, this employee of Wall, testified and asked for it, so testified. But in the prosecution history, you distinguish Andis and I think it was Andis on the ground that it does not show engagement. That's correct. It seems like you're arguing that you do have engagement that retains, that has the effect of retention. That's the argument you made in prosecution history, correct? In the original patent, there was that statement. There were a lot of other statements about the differences as well. It wasn't just that statement that resulted in allowance. When you say the original patent. This was a 973 claim one that didn't have the amendment. This is a 973 patent, not the re-exam. Right. But the re-exam has the tab added to claim one, correct? The same claim one limitation appeared in the re-exam without change about the upper cutting blade. But if I understand the engagement theory that you have, it would be that the teeth of both the movable upper cutting teeth and the fixed lower cutting teeth would both go into the notch without contacting the front end of the notch. No, no. That's not our argument at all. We don't claim anything about the bottom teeth. Well, but wouldn't they have to? No, no. How would the bottom teeth not go into the notch and the top teeth do if the bottom teeth extend beyond the top teeth? Remember, you have two sets of teeth. You could have a notch where only the upper teeth are being in engagement with that notch. The bottom teeth, we don't say anything about it. And even if they did, even if we used the bottom teeth to engage the comb somehow, that's not the claimed invention. The executive judge completely redid the invention by saying, page 31 of the brief, in the embodiments described in the specification, the front edge of the cutting head is formed by the lower teeth, but the claims recite engagement with the front edge of the upper teeth. The court will not rewrite the claims to conform to a particular embodiment if the specification is contrary to the clear claim language. But then they went ahead and did that. I understand that. Now, if you look at figure 24A of the patent, the notch is 34, correct? That's correct. Okay. There is, if you, if the teeth, if the upper teeth go into that notch, how can the lower teeth, which extend beyond the upper teeth in your preferred embodiment, how can they not also go into the notch? Assuming, as I do, that the lower, the bottom element of the blade, of the machine, is going under the tab 76, which is the way you've described it. Your Honor, we describe and show in figure 24 the upper notch labeled as 34. That notch cooperates with the upper teeth. Why does it not also cooperate? How can it not also cooperate? Please, let me just finish my question. How can it not also cooperate with the lower blade, since the two have to be operating in close conjunction, if the upper blade is going into the notch 34? That's correct, Your Honor. There could be another notch, not necessarily shown. It was not an inventive feature. It was old in the art that the lower teeth engage the comb. In our invention, we have in figure 24A a further, what looks like a notch, it's not a notch, it's an engagement part, that holds onto the lower plate, not the cutting blades, but the lower plate. That was covered in flame three of our claims. So there was an alternative way to hold it on that didn't have anything to do with the lower blades. So the prosecution history in which you assert that the Andis reference is distinguishable because it does not disclose the use of a groove notch for retention of the comb to a cutting head is just wrong? The implication being that yours does disclose a notch for retention? We do disclose a notch for retention. But not the lower notch. That was not what we were arguing about. But I thought your whole claim construction is that the notch does not have the effect of retaining the comb. The upper teeth, that's correct. The notch that the upper teeth go into does not retain the comb. The notch does not engage the upper teeth in a way that either contacts or retains. But what does result in retention in your invention? In our invention, it's not claimed in claim one, but it's shown in figure 24 and it's claimed in claim three. The plate, the lower plate, which is not either part of the lower blade or part of the upper blade, that lower plate retains the comb. So I'm lost as to why that statement about Andis does not disclaim a system in which the groove notch is used for retention. It does not disclaim it. It does not. The claim doesn't have anything to do with the groove notch for retention. Then I'm unclear as to why your prosecuting attorney said that that's why Andis is not applicable. Well, as I remember, Andis, it had no notch at all. There was no notch whatsoever. Okay. You've used your rebuttal time and restored two minutes. Can I encroach upon my three minutes just to mention the trade secret? I don't want this to be only kept for rebuttal. Sure. I'll give you another. Okay. In this case, we use what we call PWM. PWM is a term well understood by this court. We cited two cases, linear technology and power integration, which talk about PWM in the form of circuits. In fact, the later case, linear technology, was talking about circuits that were patentable, filed in applications right about the same time as our circuit was created by the inventor. We don't have to meet the patentability. All we have to do is say it was ours and it was secret. We showed the judge at the hearing the circuit. We argued, we disputed the fact that anybody used this type of circuit prior to us. And, in fact, we had made some clippers during the joint ownership period for a wall that were branded by wall, sold by wall, but incorporated this technology. What was your evidence that no one used this technology before you? We don't have any evidence that any other company is using this technology in clippers to date. And as far as knowing this technology, the inventor just testified that he spent years coming up with this particular circuit. It was trial and error. The expert said that by 2000, it was common knowledge among electrical engineers as to how to do this. If it was common knowledge, then why were patent applications still being filed about the same time in the linear technology cases that were found to be patentable and were the subject of that litigation? Well, that would be a good question for your expert, but your expert said that it was common knowledge. PWM was common knowledge. He never said our circuit was common knowledge. He said, referencing paragraph 5, I think it was, on page 2 of his expert report, that everything in paragraph 5 on page 2 was well known. I believe that's a more or less accurate paraphrase of what he said. Well, then how do you explain that patents were still being filed? Well, they actually pay us to ask questions, not to answer them. That's right. I mean, the expert obviously didn't know everything there was to know about PWM circuits. But he never said that our circuit was old. He never said that it was known. He said that you construct it given certain hypotheticals that you had access to the circuit. You were told what it was supposed to be doing, none of which was common knowledge, not public knowledge. One final question, returning to a question I had before. What is your evidence that the variable speed circuitry had not been used before in these kinds of devices? We came up with it. We had no knowledge of anybody using this before. Yeah, but what's your evidence? At summary judgment, you had to introduce evidence to that effect. And what is your evidence to that effect? I believe the statement of the inventor during deposition that he came up with it, it was not known heretofore his discovering it or formulating it. That was his testimony. All right. Thank you, Ron. We'll restore a couple minutes for rebuttal if it's needed. Mr. Hagedorn. Thank you, Your Honor. May it please the Court. This case is about plaintiff's claims for patent infringement, misappropriation of trade secrets, and breach of contract that were found to have no merit below. That decision below, that judgment should not be disturbed here on appeal. Plaintiffs now have raised what they purport to be nine issues with respect to what happened below. What about the lifting of the stay? I mean, I know there's a lot of discretion for the district court judges, but this is kind of an odd duck, right? Right. And as the Court is aware, whenever a district court issues a stay, that's discretionary on certain factors, whether it will streamline the case or limit the issues, whether there's prejudice. Yeah, and I know we review – I guess we review a lifting the motion under the same deference, but it seems like it calls into question if we – would the judge already have done it? It seems it changes the dynamics again when the judge rescinds that. The judge already presumably having made findings, as you say, that this is going to be good for the proceedings and expedite them, et cetera. Right, and then the Court then substantially two years later made additional findings with the circumstances that changed. At that point in time, the reexamination had progressed for about two years. The prosecution was closed, and I think there were 72 or 74 rejections that had been maintained. So the PTO's expertise with – or in connection with Claims 1 through 5, as Judge Bryson has raised correctly, had been confirmed. But in this case, Claims 6 and 7 still remained. Well, did they remain? Mr. Pavelko said they were never asserted. Well, and Mr. Pavelko was incorrect in connection with that. If you see appendix at 5932, I think it says Claims 1 through 7. That was the page I was referring to, but that's not a complaint. At appendix 3222, Plaintiffs' Infringement Contentions say all seven claims are infringed. I'm sorry, 3222? 3222, I believe is the correct site. 3226, it says defendants have infringed 35 U.S.C. Section 271A, B, and F by manufacturing, using, distributing, selling, and offering for sale and importing into the United States a product that infringes Claims 1 through 7 inclusively of the 973 patent. Were they ever incorporated into a formal complaint? The claims are where the claims not specifically identified in the complaint. They weren't specifically identified. So it was just under the following patent with not identifying particular claims in the Second Amendment complaint? In the Second Amendment complaint, it was Claims 1 and 4, at least Claims 1 and 4. At least was used in the complaint? Subsequent to the complaint, when the contentions are required, is when you get into more detail, of course, in pleading. It's notice pleading. They gave a notice of at least Claims 1 and 4. At the time, Wahl moved to re-exam on Claims 1 and 4. Wahl was of the firm belief that Claims 6 and 7 could never be infringed by its device. But nonetheless, after the stay was lifted, their contentions, again, asserted Claims 1 through 7. Then actually, after the stay was lifted later in the case, it was abundantly clear that these claims were invalid. They never should have been asserted, never should have been pursued. But in plaintiff's own motion to dismiss without prejudice, they again make comments such as Claims 6 to 7 being confirmed. That's at A3412. At A3413, Laube continues to believe that all seven claims are infringed. So there was clearly Claims 6 and 7 asserted in this litigation. And despite the overabundance of obviousness that these claims were not valid over just the printed publication prior submitted in re-exam, this case never should have been filed, never should have progressed. What about the trade secret part of the case, and in particular, the district court finding that this particular circuitry was in the public domain, in effect, well known? Well, the record below was a determination of summary judgment in Wall's favor based on Wall's motion and its uncontested facts, which plaintiffs never contested. As a matter of fact, in their brief at 49, they point to the uncontested facts and actually say, yes, they are true. What occurred before the district court was Wall submitted a motion that said, based on what plaintiff has defined as its trade secret, which was only pulse-width modulation, that that is not a trade secret, and Wall is entitled to summary judgment. Well, let's assume that they haven't simply claimed pulse-width modulation, however achieved, but in fact have claimed the trade secret in the particular circuitry that they employed to effect pulse-width modulation. Let's assume that, and I know you can test that. But let's assume it. That being the case, what's the basis for the district court having concluded that there's no triable issue of fact as to whether that particular circuitry was in the public domain? Well, there's no evidence that it wasn't. There was no evidence brought forward by the plaintiff. Keep in mind— Now, the plaintiff's testimony, the plaintiff asserted that he came up with this and no one else had it, right? Worse to that effect. And that begs the question what this is, which is what the plaintiff did below. Well, the plaintiff wandered around, I understand, about in his characterization of what the trade secret was. But again, let's read his testimony charitably for now and conclude that he was saying the particular circuitry in my device is my invention. I invented that, and it was a trade secret. What is it that undermines that evidence as creating issue of fact? It's difficult for me to respond to that because there was no evidence, no statements, no identification, which is plaintiff's burden below to identify what their trade secret is, to separate it from those items of general knowledge. Well, his expert introduced as part of his expert report the circuit diagram, right? Well, that was attached to the expert's report. Right, and that was essentially what he was saying. This is the core trade secret. Well, and again, I would dispute that the expert ever said this is the core trade secret. The expert said the trade secret was pulsed with modulation and then agreed that that was old. It would have been one thing had, during discovery, plaintiffs identified my trade secret is this specific circuit diagram. There was no such evidence to that effect below. What occurred was the plaintiff started off with a pleading that simply said variable speed technology. Well, that is very broad. And then in response to the discovery said, well, it's pulsed with modulation, words to that effect. I think that might even be giving them some benefit of the doubt. And it was only on summary judgment that then they said, well, no, no, no, what we really meant was it was a reduction of size. And now here is on appeal saying, no, what we really wanted to say was this very specific circuit diagram. And there was no evidence below that that is or was identified as a trade secret, even though it was plaintiff's burden. Now, Mr. Pavelko raised an interesting point, and that is that the power integration case deals with a pulse width modulation circuit in a patent from 1998. So pulse width modulation circuits were well known. No one disputes that. There is nothing in the evidence below that would distinguish that circuit diagram that was simply attached to an expert report, wasn't identified in discovery responses, that would separate that circuitry from any other generally known pulse width modulation circuitry. There simply was no evidence below that would allow the district court to find a genuine factual dispute. Talk a little bit about your waiver argument. The waiver with respect to the attorney's fees. With respect to the merits as opposed to the scope and amount of attorney's fees. Well, the argument is that below the district court found inequitable conduct and said based on the inequitable conduct under 285, Wahl is entitled to its attorney's fees. And plaintiff responded with a brief in opposition to the amount of fees that Wahl would be entitled to, suggesting a number, suggesting that certain portions of the fees not be assigned to the patent side of the case. But it was not an argument that the fees were not properly awardable under 285. So that's the waiver argument. Now when you get to the… I see what you mean by scope when you say it then. Okay. Right. So it was a fee argument, amount argument as opposed to the scope or the actual basis for the award, whether that was proper. If I can return now, I want to make sure I understand what you're saying about the circuit. Because reading the expert report, the expert says an improvement to overcome the disadvantages, in this case the prior art, in the use of a pulsed variable speed controller, and then references Appendix D. That was the improvement. And it's in Appendix D that we have the circuit diagram. Why isn't that exactly the claim that the circuit diagram is what he came up with and that's the trade secret? Well, I believe the expert's report says, such as. He simply says a pulse width modulation controller, such as. He doesn't say this specific one, such that someone could tell whether, let's say, the 555 timer is connected to a resistor before a capacitor, specifically and with particularity set forth. That is the trade secret. Pulse width modulation, everyone knows. This is a particular type. This is a particular implementation of pulse width modulation. So he says pulse width modulation, such as the particular type of pulse width modulation achieved by my circuit. In effect, that's the way I'm reading it. Well, and with all due respect, I would dispute that's the proper way to read that. What he said was pulse width modulation, which had been what was disclosed in discovery as the trade secret, was known and that the plaintiff had a controller, such as. That is not an assertion that the plaintiff's trade secret is this specific circuit diagram. All pulse width modulation controllers have a circuit. There's nothing in the record that would identify that this particular circuit was anything distinguishable. Anything distinguishable about this circuit as far as components, how they're put together, that is anything but what is known as pulse width modulation. Does Wahl use the same circuit that was used in Laube? It's my understanding that Wahl does not use the same circuit. I believe the record has a declaration from Bowers, maybe Matt Bowers, I'm losing the first name, where there was an analysis, did a comparison. Wahl clearly uses a different timer chip. I think it has a different number of prongs. And I don't recall the district court basing its summary judgment ruling on that, correct? Did not specifically refer to it in the decision. But I didn't find that the circuit's irrelevant because Wahl uses a different circuit. That was not a finding specifically made. The Wahl uncontested facts were supported with the declarations of several individuals, including Mr. Bowers, in that summary judgment proceeding. Can I ask you one question about the – I find the claim construction issue to be difficult to parse. What is your understanding of – well, let me back up. It sounds as if, if you look at figure 24A of the 736, it looks as if the tab does the retention and the notch, at least according to the PTO, the way they viewed the claim construction, has the engagement, which doesn't necessarily require contact for retention. That's my understanding of what the PTO's construction of the claim is. Right? Have I got it right? It may be a little bit more nuanced than that, but I agree. Well, with respect to the interaction of the tab, the notch, and the blades, and the bottom section of the, I guess, the cutting head. Right, and what you're referring to, though, is the mounting tab, the mounting notch, which are separate from the groove notch, which was – Yeah, I understand. Claim one. So – 76 is the tab, and 34 is the groove notch. Yeah, I understand. Right. So 34, the groove notch, is what is for engagement. And what the PTO said was, based on the plaintiff's argument during re-exam, that, well, although the examiner has said that that language is functional and it's not really structural, doesn't distinguish over the art, what plaintiff is asserting is that it simply means they work together, which, of course, applies to all the prior art. All the prior art, the groove notch, work together with the cutting teeth in whatever regard. The important distinction here is that the claim construction was correct. Even if it wasn't correct, it's odd because there's a covenant not to sue. They don't appeal the invalidity and non-infringement determinations of the district court. They say that the district court made an improper construction for purposes of but-for materiality when the district court judge – I'm sorry. I'm about to run out of time. Footnote 2 of that decision specifically says there was a dispute of this term. That doesn't matter for inequitable conduct because the focus is, as the arguments you pointed out earlier, is what the art is relevant to and why there was inequitable conduct ultimately in this case. I'm out of time. Can I just ask one further question? Sure. Returning to the chief judge's question about the stay, the normal course of events in these kinds of cases would be for the judge at least to wait until the board had acted on the examiner's examination rule. That would be – that's normally what happens. In fact, I can't remember a case in which the court vacated the stay at the point at which the examiner had reached his conclusion, but the board had not – when the case was on appeal, but the board had not. So I'm wondering what were the special circumstances of this case that impelled the district court to deviate from that ordinary course? I think the ordinary course, case specific, I think the ordinary course would be that the reexamination would fully dispose of a patent infringement claim. Does this go back to 6 and 7? This goes back to 6 and 7 also. Inequitable conduct and fees and so forth. Fees and additional basis for non-infringement. What you're saying is that there was plenty still on the district court's plate to be done regardless of how the reexamination came out, and therefore he decided to just get back into the game a little earlier than he might otherwise. But that does leave open the question of why getting back into the game, which would include having to go through at minimum the whole Markman process, wasn't a waste of time and ultimately money for the parties. But the Markman process was still going to be applicable to claims 6 and 7. Assuming that they were asserted. I guess I go beyond assuming. Right. Mr. Pavelko thinks that they weren't asserted. But I think you summarized it correctly is that there was additional work on the court's plate, and I would suggest that at each of those stages, the lack of merit in the patent infringement claim was clear. It was abundantly clear, and it was plaintiffs who could have tried to put finality to that claim. But at each juncture tried to say, for example, I quoted earlier, we still assert all seven claims and we want to assert those in another case. We just don't want to do it now. So as the district court had found, each step of the way, instead of bringing finality to the case, the patent court of the case, simply tried to keep it open as most advantageously as possible.  Thank you. Thank you. Good. Well, I can answer to your question about where lobby stated it begins in the opposition to application for attorney fees at a 1, 2, 5, 2, 7, and specifically at a 1, 2, 5, 3, 0 dash 1, 2, 5, 3, 2. The paragraph or sentence actually within pages 3.0 and 3.1 says, in short, lobby sought to avoid all fees being incurred by Wally Wall by waiting for reexamination to be concluded. Pursued its claims only so far as a markman decision made clear that the infringement on the claims as interpreted by the court would not be forthcoming and sought to end all patent related expenses at that point. He continues on at 3.2. While lobby acknowledged the court has deemed the patent portion of the case to be exceptional and indicated the attorney's fees would be awarded for those issues. Even where a case is deemed exceptional for purpose of 285, as here it does not necessarily follow that attorney's fees must be awarded to the prevailing party. So this was the general denial of all attorney's fees. And then he had very specific sections. With regard to. Where are we on claims 6 and 7? Do you now agree with your opposing counsel on the 6 and 7? Your Honor, you know the history here that the counsel died. We don't really know what was in his mind. He died right after the trial. Well, it kind of doesn't matter what was in his mind. What matters was what was in the record. And what was in the record was his infringement conditions, a contention saying 6 and 7 are being asserted, right? That's what he said in that part. If I were the district judge, I'd take him at his word. And I would assume 6 and 7 are part of the case, wouldn't you? But again, Your Honor, there would be a presumption if the certificate issued. Then the party could not raise again that which he might have raised in the re-exam. 6 and 7 would have been precluded by a further attack. The lobby prior art before the PTO was in the form of a publication, a photograph and a brochure of the lobby prior art. The lobby prior art in the litigation was a physical embodiment. It could have been the object which became the photograph. For all purposes, it qualifies under a different section. It could be in public use. It could be offered for sale. We agree. But it was the same technical disclosure. So he was getting a second bite at the apple by going back to the district court and saying, now I want to use a physical exhibit rather than a publication of that physical exhibit. With regard to your question about where lobby contested the facts, at page 48 of our brief, we say specifically A7089. I don't want to quote that in the record. But it was the testimony concerning whether or not anybody else had used that PWM circuit. Well, yeah. I pulled up that page. And that all you cite in support of that is Albert's declaration, which doesn't say that. If you look at the right-hand column of 7089, it says it's a reference to the Albert declaration. And I don't see in the declaration that statement. The fact is disputed to the extent that it incorrectly suggests that anyone other than KLT used or offered a solid state. Where are you reading from? Where are you reading? This is 7089. Yeah. The paragraph 10 contested fact, middle of the paragraph. Right. That's the assertion you make. And you're supporting evidence, which is the evidence you need to put in for Solitec's purposes, is the declaration of Mr. Albert. And if one goes to the declaration of Mr. Albert, I didn't at least see anything that supports that lawyer argument that's in the left-hand column. Well, it also refers to Exhibit 10. I don't know what the 10 rule decision states. But he testified, Mr. Lobby personally testified that he didn't know anybody else that used this PWM circuit. All right. For Solitec's purposes, that's the place you're supposed to put the evidence that you say should bar summary judgment. Well, remember, this is factual disputes. It's whether or not there's a material fact and dispute on summary judgment. I understand. There were several disputes. You understand the way Solitec works, right? I understand what you're saying about this one particular fact, that nobody else used it. It wasn't our burden to show that nobody else used it, was it? All we had to do was say it was ours, we created it, and we hid it from public view. They assert, and with evidence that this technology was in common use, you have to introduce evidence to the contrary. They only said PWM was in public use, not this circuit. Thank you very much. We thank both counsel. The case is submitted. That concludes our proceedings. All rise.